## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ROBERT HERMAN,

       Plaintiff,

                               Case No. 3:20-cv-326-MMH-LLL

vs.

AAR GOVERNMENT SERVICES,
INC., a Foreign Profit Corporation,

       Defendant.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 44; Motion), filed on June 18, 2021. In the Motion, Defendant AAR Government Services, Inc. (AAR) requests that the Court enter summary judgment in its favor pursuant to Rule 56, Federal Rules of Civil Procedure (Rule(s)). <u>See</u> Motion at 1. Plaintiff Robert Herman filed a response in opposition to the Motion on July 2, 2021. <u>See</u> Plaintiff's Amended Response and Opposition to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 45; Response). On July 16, 2021, Defendant filed a reply. <u>See</u> Defendant's Reply

in Further Support of its Motion for Summary Judgment (Doc. 46; Reply).[1] Accordingly, this matter is ripe for the Court's consideration.

## I.  Background[2]

This case arises out of Herman's termination from AAR on January 16, 2019.  See generally Second Amended Complaint and Demand for Jury Trial (Doc. 6; Second Amended Complaint).[3]  Herman first began working for AAR as an order picker around May of 2013, when he was 52 years old.  See Motion at 1; see Robert Herman Deposition (Doc. 44-4; Herman Depo) at 17, 27.  In August of 2016, an ongoing conflict between Herman and his coworker, Robert Burrus,

---

[1]   AAR first filed a summary judgment motion on April 16, 2021, see Defendant's Summary Judgment Motion with Incorporated Memorandum of Law (Doc. 37), and Herman responded on May 21, 2021.  See Plaintiff's Response and Opposition to Defendant's Motion for Summary Judgment, Statement of Undisputed Material Facts and Incorporated Memorandum of Law (Doc. 41).  On June 4, 2021, the Court entered an Order notifying the parties that their filings were inconsistent with this Court's Local Rules and directed them to correct the filings.  See Doc. 42.  As such, the Motion and Response as well as the Reply filed after the Court's Order (Doc. 42) and in compliance with the Local Rules are the relevant filings.

[2]   For the purposes of resolving AAR's Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to Herman.  However, the Court notes that these facts may differ from those ultimately proved at trial.  See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

[3]   Herman filed his original complaint on March 30, 2020.  See Complaint and Demand for Jury Trial (Doc. 1; Original Complaint).  In an Order entered on April 1, 2020, the Court explained that the Original Complaint constituted an impermissible shotgun pleading and directed Herman "to file an amended complaint that sets forth each of his claims for relief in a separate count."  See Order (Doc. 5) at 2.  Herman filed an amended complaint on May 1, 2020.  See Amended Complaint and Demand for Jury Trial (Doc. 6; Amended Complaint).  On July 15, 2020, Herman filed an Unopposed Motion for Leave to Amend Complaint to Substitute Proper Party Defendant and Amend Style (Doc. 21) and attached a proposed second amended complaint.  The Court granted the unopposed motion on July 17, 2020, and directed the Clerk to file the proposed complaint on the docket as of July 15, 2020.  See Order (Doc. 24).  Accordingly, the Second Amended Complaint and Demand for Jury Trial (Doc. 26) is the operative pleading in this action.

culminated in both employees being sent home to prevent a physical altercation between them.  See Herman Depo at 31-33, 73-74; see Michael Lile Deposition (Doc. 44-8; Lile Depo) at 18.  In a written warning to Herman documenting this event, which Herman refused to sign, Herman's manager Dudley Reynolds and AAR Human Resources Representative Lizzy Vasquez, recorded that Herman "was verbally coached" a few months prior regarding a similar incident with Burrus.  Exhibit 5: Written Warning (Doc. 44-5).  Burrus ultimately left AAR in February of 2017.  See Herman Depo at 18.  Around this same time, Herman began having problems with another coworker, Christopher Pate.  See Herman Depo at 45-48.

While Herman's interactions with Burrus included negative comments directed at Herman about his wife and kids, Pate "made a lot of comments to [Herman] about [his] health and about [his] age."  Id. at 49-50, 40-41.  Specifically, Pate referenced Herman's age by calling him names like "old fart and old goat" and stating that Herman would not work at AAR much longer.  Id. at 46-47.  Herman complained twice to his supervisor, Mike Lile, about Pate's name-calling "but stopped complaining because nothing was getting done."  Id. at 74.  On or about July 2, 2018, Herman applied and was selected for an open position in the Raytheon department, which was at the far end of the warehouse, away from where he worked with Pate.  See id. at 77-78; see Exhibit 1: Declaration of Esmeralda Garcia (Doc. 44-1; Garcia Decl.), Exhibit C; see

Herman Decl. at 3.  Herman and Lile were both hopeful that the move would deescalate the conflict between Herman and Pate because they would no longer work in close proximity.  Herman Depo at 77-78; Lile Depo at 63.  Nonetheless, Herman still walked past Pate's work area for breaks or at lunchtime where negative comments and gestures persisted from both employees.  Herman Depo at 43, 87-88.  However, Herman did not "levy any additional complaints" about Pate.  Herman Decl. at 7.

In addition to the comments by Pate and Burrus, Herman maintains that his manager Dudley Reynolds made age-related comments while Herman was employed at AAR.  Herman asserts that around 2016 or 2017, Reynolds made a comment about there "being too many old chiefs" and needing more "young bucks around" at AAR.  Id. at 50-52.  Reynolds also commented that a particular employee "only [had] two speeds, slow and slower, and if it wasn't for his military background, his old ass would be out of here, too."  Id.  In 2014 or 2015, on one specific occasion, Herman overheard George Mayo, a 59-year-old AAR employee, threaten to shoot the regional manager.  Id. at 39.  In reference to this incident Reynolds laughed and said "[y]eah, when you get to that age, your mind snaps."  Id. at 59.  Representatives from the human resources department in Illinois came to Jacksonville to interview employees who witnessed Mayo's comment including Herman.  Id. at 65.  During his interview, in addition to verifying Mayo's threat, Herman mentioned Reynolds' comment and told human

4

resources that he felt Reynolds could have handled the situation more professionally.  Id. at 66.  Herman did not, however, complain to human resources or anyone else at AAR about any of Reynolds' other age-related comments.  Id. at 67.

On January 11, 2019, Lile emailed human resources in response to a complaint from Pate that Herman had been using profanity, making vulgar comments towards him, and went out of his way to stare at Pate, make comments, or "give him the finger."  See Garcia Decl. at 2; Garcia Depo at 18-19.  In his email, Lile explained that since Burrus had left AAR, "Herman just had to find someone else to harass . . . [t]he new target is Chris Pate, my number 1 warehouse clerk."  Garcia Decl., Exhibit C.  Despite transferring Herman to the Raytheon department, Lile wrote that Herman took a route to the restroom and breakroom that takes him by Pate to make "rude and inappropriate comments."  Id.  Lile expressed,

> this isn't like a performance issue where I will give a person multiple chances to fix the problem; put them on a performance improvement plan and provide additional training.  This is basic professionalism, integrity and character issue.  The stuff every employee must bring to the game on the first day.  We have good anti-harassment policies; # Be Inclusive, Work as One, etc.  I request that we do not turn this into a multi-phase, second, third and final warning scenario.  He has been counseled once already.  He has history.  I am sure he is going to deny it this time too, but this time I have witness [sic], who will back Chris up.

Id.

Upon receipt of Lile's complaint, Esmerelda Garcia from the human resources department undertook an investigation. Garcia Decl. at 2. As part of the investigation, Lile called Herman to his office where Garcia interviewed him by phone. See id. at 3; Herman Depo at 79. Garcia questioned Herman about his interactions with Pate and let Herman know that she was investigating the situation. Herman Depo at 79-80, 83, 92. Herman advised Garcia that he and Pate did not have a relationship but acknowledged there had been some back and forth between them. Garcia Depo at 20. Additionally, in his deposition during the discovery phase in this case, Herman testified that during his interview in discussing his interactions with Pate, he told Garcia:

> Oh, I guess if he called me a queer or a fag or faggot or – I would just say, yeah, right back at you, Pal. F*** you. I'd say f*** you back. Or suck my dick. I would say suck my dick. It was just s**t where I was fed up dealing with a young guy like this, start – trying to start crap with me. But yeah, I would say stuff right back at him, towards the end.

Herman Depo at 87. According to Herman, Pate instigated the confrontations. Garcia Depo at 20.

Garcia interviewed Pate, Lorinda Nelson, Ida Johnson, and Dudley Reynolds as part of her investigation. See Garcia Decl. at 2, Ex. D. Pate told Garcia that Herman came by his workstation to stare at him and called him things like "Asshole," "F**king idiot," and "Fag." Id. He also told her that Herman threatened to beat Pate's ass. Id. Pate expressed to Garcia that

although Herman switched departments, he would still go out of his way to confront Pate. Id. Pate explained that his reaction generally was to laugh it off and not respond and noted that when Burrus had issues with Herman, "the more that Burrus complained, the worse it got for him." Id. Pate testified that Herman's conduct got "worse and worse." Deposition of Christopher Pate (Doc. 44-9; Pate Depo) at 12. The breaking point that caused Pate to complain was when Herman told Pate that the reason Pate had needed surgery was that "[Pate] was getting f**ked in the ass by guys." Id. at 40.[4] Additionally, Pate identified several employees, most of whom Garcia interviewed, as individuals who had witnessed Herman's behavior. Garcia Decl., Ex. D.

In her interviews, Garcia found that these individuals largely corroborated Pate's complaints about Herman. Garcia Depo at 21. Specifically, Ida Johnson told Garcia that she knew of issues between Herman and Pate and that other AAR employees suffered similar treatment by Herman. Id. In her notes from the interview with Johnson, Garcia documented that Johnson reported that Herman spread a rumor that she was having an affair with Reynolds, that Herman could be described as a "pot-stirrer, instigator, arrogant, cocky, very rude, menace, jerk" and that "everyone has witnessed [Herman] being a jerk at some point in time." Garcia Decl., Ex. D.

---

[4]    Garcia's notes reflect that Pate reported this statement to her in his interview. Garcia Decl., Ex. D. Herman denies ever making such a statement, but does not dispute that Pate reported to Lile and Garcia that Herman did so.

Garcia's notes from her interview with Lorinda Nelson reflect that Nelson stated that Pate came to her about the issues Pate was having with Herman. Id. She advised that these types of issues with Herman had been going on for years, and that Herman was a bully and made comments about Nelson doing SlimFast. Id. According to Nelson, when Johnson called Herman out for failing to follow protocol, Herman "[w]rote Ida's name under a skull picture; [c]rossed her name out on the potluck listing; [and] [took] things off her cart." Id. With respect to Jim Lynch, Garcia's notes reflect that Lynch said he had not seen any inappropriate behavior lately but noticed Pate was upset and spoke with him about what was going on. Id. Previously, Herman had "gotten in Jim's face because he put trash in a bin that Robert Herman had just emptied," but it only happened the one time because Lynch lashed back at him. Id. Lynch expressed in his interview that he avoids Herman and believes other employees do the same. Id. Lynch also expressed the view that Herman "takes pleasure in causing problems/chaos," that there have been continuing problems with Herman, and that "[h]e clashes with people and likes to stir the pot." Id. In his interview with Garcia, Dudley Reynolds explained that he had not heard of recent issues with Herman but knew there were problems in the past. Id. He was also aware of the issues with Herman and Johnson, although they were handled by a different supervisor. Id. Ultimately, Reynolds stated that he felt

that "there would not be a big impact to the team if they lost Robert Herman as an employee."  Garcia Decl., Ex. D; see Garcia Depo at 21-22.

Based upon her investigation, Garcia concluded that Herman engaged in inappropriate behavior and language in the workplace in violation of AAR policy and had a habit of picking on his co-workers at the Jacksonville warehouse. Garcia Depo at 23.   In light of these findings, Garcia recommended to her supervisor, Human Resources Director Jeffrey Kroesch, that AAR terminate Herman.  Garcia Decl. at 3.  Garcia then presented her recommendation to the rest of her team, Vice President of Human Resources, Nicole Colen, Vice President and General Manager of Government Programs, Jay Pereira, and Senior Vice President of Integrated Solutions, Nicholas Gross.  Id. at 3-4.  The team unanimously agreed with Garcia's recommendation and approved Herman's termination.  Id. at 4.  On January 16, 2019, Lile informed Herman that he was being terminated.   Herman Depo at 93.  AAR replaced Herman with an employee that was approximately 30 years old.  See id. at 120; see Garcia Depo at 39.

Herman subsequently filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) against AAR.  See Second Amended Complaint at 2.  On January 29, 2020, the EEOC provided Herman a Right to Sue Letter informing him that its investigation established reasonable cause that some or all of the violations alleged in the charge

occurred.  Id.  Thereafter, Herman initiated the present action on March 30, 2020, by filing his four-count complaint alleging claims of discrimination and retaliation under the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 et seq. (ADEA) and the Florida Civil Rights Act, Fla. Stat. § 760.10 (FCRA).  See generally Original Complaint.

## II.    Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[5]  An issue is

---

[5]     Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 Advisory Committee's Note 2010 Amends.

> The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 F App'x 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

In citing to Campbell, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority."  United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished

genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

opinions are not considered binding precedent, but they may be cited as persuasive authority.").

summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>McCormick v. City of Ft. Lauderdale</u>, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case.").    In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## III.   Discussion

As a preliminary matter, the Court notes that age-related discrimination and retaliation claims under the FCRA are analyzed under the same framework as the ADEA.  <u>Mazzeo v. Color Resols. Int'l, LLC</u>, 746 F.3d 1264, 1266 (11th Cir. 2014) (citations omitted); <u>see also</u> <u>Cardelle v. Miami Beach Fraternal Ord. of Police</u>, 593 F. App'x 898, 903 (11th Cir. 2014).  Thus, the law applicable to and the Court's discussion of Herman's ADEA discrimination and retaliation claims also apply to his claims under the FCRA.

### a. Discrimination

The ADEA and FCRA make it unlawful for an employer to discriminate against an employee because of such employee's age.  <u>See</u> 29 U.S.C. § 623(a)(1); Fla. Stat. § 760.10.   "A plaintiff may establish a claim of illegal age

discrimination through either direct evidence or circumstantial evidence." <u>Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs</u>, 512 F.3d 1296, 1300 (11th Cir. 2008) (citation omitted). The Eleventh Circuit has explained that "direct evidence is evidence that 'if believed, proves the existence of a fact without inference or presumption.'" <u>Todd v. Fayette Cnty. Sch. Dist.</u>, 998 F.3d 1203, 1215 (11th Cir. 2021) (quoting <u>Fernandez v. Trees, Inc.</u>, 961 F.3d 1148, 1156 (11th Cir. 2020)).

> In other words, the evidence must indicate that the complained-of employment decision was <u>motivated</u> by the decision-maker's ageism. As a result, only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute direct evidence of discrimination.

<u>Damon v. Fleming Supermarkets Of Fla., Inc.</u>, 196 F.3d 1354, 1358-59 (11th Cir. 1999) (emphasis in original) (citation and quotation omitted). For this reason, evidence that "merely 'suggests, but does not prove, a discriminatory motive' is not direct evidence." <u>Todd</u>, 998 F.3d at 1215 (quoting <u>Fernandez</u>, 961 F.3d at 1156).

ADEA claims premised on circumstantial evidence rather than direct evidence are evaluated under the burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

> To make a prima facie case of age discrimination, the employee must show: (1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the

position from which he was discharged; and (4) he was qualified to do the job from which he was discharged.

Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015) (citing Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012)). If the plaintiff presents a prima facie case, "the burden of production is shifted to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." Sims v. MVM, Inc., 704 F.3d 1327, 1333 (11th Cir. 2013) (emphasis in original) (citing Tex. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981)). If the defendant meets this burden of production, "the employee is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination." Id. (citations omitted). "Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee." Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993)).

In the Motion, AAR argues that the Court should enter summary judgment in its favor with regard to Herman's discrimination claims under the ADEA and the FCRA because Herman has not presented direct or circumstantial evidence of age discrimination. See generally Motion. First, AAR asserts that Herman has not identified any direct evidence of age discrimination. See id. at 12-13. Second, AAR contends that Herman cannot present circumstantial evidence of age discrimination under the McDonnell

14

Douglas framework.  See id. at 13-20.  With respect to this second argument, AAR maintains that Herman was not qualified for his job because he violated the company's anti-harassment policies and as such, cannot make a prima facie showing of age discrimination.  See id. at 14.  Even if Herman could make a prima facie showing, AAR insists that it had a legitimate reason for terminating Herman based on these same violations.  Id. at 15.  Finally, AAR argues that Herman cannot demonstrate that its reason for firing him was merely pretext because: (1) AAR's investigation revealed sufficient evidence of inappropriate conduct by Herman to support a good faith belief he engaged in such conduct, (2) the "stray" age-related comments alleged by Herman did not come from any decisionmakers, (3) the individuals over the age of 40 who have also been terminated were identified by Herman without any showing that such terminations were based on their age, and (4) AAR hired and fired Herman while he was within the protected age group which creates an inference of nondiscrimination.  Id. at 16-20.

In Response to AAR's argument regarding direct evidence, Herman points to age-related, derogatory comments by his two coworkers, Pate and Burrus. Response at 11-13.  Herman also contends that Lile ignored his two complaints about Pate's name-calling which, in his view, constitutes direct evidence of age discrimination.  See id. at 12-13.  Herman further argues that "it is illogical to believe that Garcia 'did not' know that Plaintiff was, at the very least, over the

age of forty (40) at the time she recommended his termination," <u>Id.</u> at 14, and that "[t]his, unequivocally, establishes a causal connection between Plaintiff's complaints of age discrimination and subsequent investigation by Garcia, and Plaintiff's unlawful termination – without providing him a reason for doing so." <u>Id.</u>   With regard to whether he presented circumstantial evidence of age discrimination, Herman argues that he

> was unquestionably qualified to do the job from which he was fired – performing all essential job functions without substantial issue and performance of his essential job functions was not identified by Defendant to Plaintiff as a source of Plaintiff's termination, but instead, articulated not a single reason for Plaintiff's termination to him.

<u>Id.</u> at 15.  Herman maintains that AAR has not proffered a legitimate reason for firing him because "[t]he sole reason behind Plaintiff's termination was discriminatory animus based on his age." <u>Id.</u> at 16.  Without addressing AAR's specific arguments, Herman contends that the reason proffered was merely pretext because of Burrus and Pate's comments related to his age.  <u>Id.</u> at 17-18. Herman asserts

> [a]ge was the only reason for Defendant's adverse employment action taken against Plaintiff, Defendant's actions were pretextual, without a legitimate, non-discriminatory reason for doing so, and Plaintiff has demonstrated the requisite "but for" causation to establish a claim for intentional age discrimination <u>via</u> direct and circumstantial evidence.

<u>Id.</u> at 18 (citations omitted).  In its reply, AAR generally reiterates the same arguments presented in the Motion.  <u>See generally</u> Reply.

Despite his argument to the contrary, Herman has not identified any statement that constitutes direct evidence of age discrimination.  He points to no evidence that anyone at AAR who was involved in the decision to terminate him demonstrated blatant discriminatory animus towards him such that it could amount to evidence of age discrimination.  His assertion that Garcia must have known his age,[6] is simply unavailing.  Knowledge of a person's age is not direct evidence of age discrimination.  Indeed, even assuming Garcia knew Herman's age in January of 2019, he points to no comment or statement reflecting any discriminatory animus on her part.  Instead, Herman simply argues that his age was the reason she terminated him, that Garcia's investigation was "haphazard," and that her recommendation was "retaliatory."[7]  Id.  However, none of this constitutes direct evidence of age

---

[6]     In his declaration Herman states,

> I have no knowledge of whether Garcia had knowledge of my age "[a]t no time during the interview," but that is inconceivable given her review my personnel file (age discrimination complaints therein), witness interviews and overall investigation into Pate's manufactured complaint.

Herman Decl. at 6.

[7]     Herman's citations to the record in support of his arguments are largely unhelpful.  For example, in support of his claim that Garcia ignored his complaints of age discrimination and that Garcia conducted a haphazard investigation, Herman cites to "ECF 37-1 at Ex.1-4." Document number 37-1 is AAR's Statement of Material facts in the original motion for summary judgment that the Court struck as being inconsistent with its Local Rules and which does not contain any exhibits.  See Defendant's Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment (Doc. 37-1).  In the same paragraph of the Response, Herman cites to "ECF No. 49:24-50:19."  See Response at 13.  Document number 49 is Plaintiff's Motion to Withdraw Alexander Harne, Esq. As Counsel of Record (Doc. 49) and the Court is unable to discern its possible relevance to Herman's arguments regarding Pate and Burrus' purported discriminatory comments.

discrimination.  See Damon, 196 F.3d at 1359 ("An example of direct evidence would be a management memorandum saying, 'Fire Earley – he is too old.'"). Nor does Lile's failure to address Herman's complaints about name-calling constitute evidence that he bore any discriminatory animus toward Herman due to his age.[8]  Moreover, to the extent Herman contends that Pate, Burrus, or Reynolds' statements qualify as direct evidence of discrimination, none of these individuals took part in the decision to terminate him.  Lile Depo at 27; Reynolds Depo at 11.  As such, their conduct cannot constitute direct evidence that Herman's termination was based on his age.  Morgan v. Kalka & Baer LLC, 750 F. App'x 784, 787 (11th Cir. 2018) ("remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination.") (quoting Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).  Additionally even viewed in the light most favorable to Herman, all of these comments, even in combination with Herman's eventual termination, at most, "suggest[] discrimination, leaving the trier of fact to infer discrimination based on the evidence; by definition then, the evidence is circumstantial."  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990) (citing Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir.

---

[8]     Notably, in his deposition Herman testified that he believed Lile wanted to keep him as an employee but Lile's hands were tied by the decision of "HR."  Herman Depo at 94-95.

1987)).   Such evidence fails to rise to the level of direct evidence of age discrimination.   <u>Damon</u>, 196 F.3d at 1358-59 ("only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute direct evidence of age discrimination.").

In the absence of direct evidence, the Court turns its consideration to whether Herman can prevail on his age discrimination claims on the basis of circumstantial evidence.   The parties do not dispute that Herman can satisfy three of the four elements required to make a prima facie showing of age discrimination under the <u>McDonnell Douglas</u> framework.   Herman, at fifty-eight years old, was a member of the protected group, he was subject to an adverse employment action when AAR terminated him, and he was replaced by an individual substantially younger than he was at the time.   <u>See</u> Herman Decl. at 2; <u>see</u> Herman Depo at 120; <u>see</u> Garcia Depo at 39.   Nevertheless, AAR contends that Herman has failed to make his prima facie showing because Herman cannot satisfy the final element: that he was qualified for the job from which he was discharged.   Motion at 14.   In making this argument, AAR relies on Herman's purported violations of company policy, which is also the reason proffered for his termination.   <u>Id.</u>   This contention is without merit.   The Eleventh Circuit has instructed that district courts should not consider an employer's justifications for terminating an employee in determining whether the employee was qualified for the job.   <u>See</u> <u>Liebman</u>, 808 F.3d at 1299-1300

19

("When it found that [the plaintiff] was not qualified for his position based on [his employer's] proffered reasons for firing him, the district court conflated the burden shifting stages of the <u>McDonnell Douglas</u> framework."). To determine whether the plaintiff was qualified for the position from which he was fired, courts should instead focus on the plaintiff's skills and background. <u>See</u> <u>Clark</u>, 990 F.2d at 1227 (citations omitted). And, a plaintiff, such as Herman, can create an inference that he was qualified for a particular position if he had held the position for a significant amount of time. <u>Damon</u>, 196 F.3d at 1360 (citations omitted).

The record before the Court reflects that Herman worked at AAR for almost six years prior to being terminated. <u>See</u> Herman Depo at 28-29. His supervisor Reynolds did not recall Herman receiving less than meets expectations on his performance evaluations. Reynolds Depo at 18. Lile testified that Herman was a good worker in that "he was dependable, he was at work every day, did his job." Lile Depo at 24. However, the record also contains evidence casting doubt on Herman's qualification for the position he held at the time of his termination. In Lile's email to human resources regarding Pate's complaint, Lile stated that Albert Evans, the lead of the Raytheon department, said "Herman has been extremely slow picking up his new job." Garcia Decl., Ex. C. At a minimum, this record establishes a genuine issue of fact for trial. As that is all that is required of Herman at this, the summary judgment stage,

the Court finds that Herman has presented sufficient evidence to establish a prima facie case of age discrimination.

Turning to the second step of the <u>McDonnell Douglas</u> framework, the Court considers whether AAR has come forward with evidence of a legitimate, non-discriminatory reason for terminating Herman's employment. To satisfy its burden, AAR asserts that it terminated Herman because he "engaged in a pattern of inappropriate behavior and language in the workplace that violated AAR's Code of Conduct and Anti-Harassment Policy." Garcia Decl. at 3; Gross Decl. at 2. This evidence satisfies AAR's burden of producing a legitimate, nondiscriminatory reason for terminating Herman. <u>See</u> <u>McCoy v. GEICO Gen. Ins. Co.</u>, 510 F. Supp. 2d 739, 752 (M.D. Fla. 2007) (noting that an employer may terminate an employee for company policy violations); <u>see also</u> <u>Garriga v. Novo Nordisk Inc.</u>, 390 F. App'x 952, 955 (11th Cir. 2010) (internal investigation finding violation of company policy was a legitimate, non-discriminatory justification for employee's firing). Therefore, the burden returns to Herman to show that AAR's proffered legitimate business reason is pretextual and the true reason for his termination was age discrimination. <u>See</u> <u>Sims</u>, 704 F.3d at 1333.

A plaintiff may demonstrate that an employer's reason is pretextual by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Combs v.</u>

Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). However,

> [a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (citations omitted). Indeed, as the Supreme Court has explained, a reason cannot be a "pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's, 509 U.S. at 515 (emphasis in original, quotations omitted). Significantly, at this stage, the plaintiff's burden of demonstrating that the employer's proffered reason was not the true reason for his termination "merges with the [plaintiff's] ultimate burden of persuading the court that []he has been the victim of intentional discrimination." Burdine, 450 U.S. at 256. Thus, "the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1325 (11th Cir. 2011).

Here, Herman fails to point to any evidence casting doubt on Gross and Garcia's contention that AAR terminated Herman for violating company policy. AAR's Code of Conduct and Anti-Harassment Policy prohibit employees from

engaging in intimidating, hostile, or offensive behavior and provide that AAR reserves the right to terminate those employees in violation of that policy.  See Garcia Decl. at 3, Ex. A.  It is undisputed that Garcia received an email from Herman's supervisor Mike Lile, suggesting that Herman was engaging in conduct that violated AAR policy.  See id., Ex. C.  Lile stated, among other things, that Herman had a prior problem with Burrus, that Lile transferred Herman but he continued to have interpersonal conflicts with Pate, that Evans, Herman's new supervisor at Raytheon, said Herman was a complainer who stirs the pot, that Lile felt Herman's behavior was "a character issue," and that terminating Herman "would be good for the masses."  Id.  Pate reported that Herman used profanity, called him names, threatened him, and made an inappropriate statement about Pate's recent surgery.  Garcia Decl., Ex. D.  Garcia's investigation of Lile's allegations revealed that a number of Herman's coworkers felt that Herman engaged in harassing behavior.  See generally id., Ex. D; Motion, Ex. 5; Garcia Depo at 23-24.  Garcia also interviewed Herman.  Garcia Decl. at 2.  Notably, Herman testified that during his interview in discussing his interactions with Pate, he told Garcia:

> Oh, I guess if he called me a queer or a fag or faggot or – I would just say, yeah, right back at you, Pal.  F*** you.  I'd say f*** you back.  Or suck my dick.  I would say suck my dick.  It was just s**t where I was fed up dealing with a young guy like this, start – trying to start crap with me.  But yeah, I would say stuff right back at him, towards the end.

23

Herman Depo at 87.  After completing her investigation, Garcia recommended to a team of human resources personnel that AAR terminate Herman for violating company policy.  Garcia Decl. at 3-4.  All members of the team agreed with the decision.  Id.

In an effort to show pretext, Herman argues that Lile's email to human resources was "based on lies and misrepresentations communicated to him by Pate because it never happened . . . ."  Response at 7.  However, not only is the record devoid of any evidence to support his contention but "'[a]n employer who fires an employee under a mistaken but honest impression that an employee violated a work rule is not liable for discriminatory conduct.'"  Hudson v. Blue Cross Blue Shield of Ala., 431 F. App'x 868, 869 (11th Cir. 2011) (quoting Damon, 196 F.3d at 1363; see also Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1453 (11th Cir. 1987) ("[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not [discriminatory] . . . .") (citation omitted).  Herman fails to point to any evidence suggesting that Lile and Garcia did not honestly believe Pate's complaints.[9]  And while Herman seems to believe that other employees like Mr. Lumsford would deny having seen harassing

---

[9]     Herman admits that he has "no knowledge regarding the witness interviews conducted by Human Resources Generalist, Garcia, in connection with Pate's complaint to Human Resources" such that he could provide reasons Garcia did not actually believe them.  Herman Decl. at 9.

behavior from Herman and corroborate Herman's side of the story, see Herman Decl. at 5, that evidence fails to create a genuine issue of fact for trial because it is undisputed that the employees interviewed by Garcia did complain about Herman's workplace conduct.

"It is a well-settled principle of employment law that in investigating employee misconduct and reaching an employment decision, employers are entitled to make credibility decisions, and [the Court's] inquiry is limited to whether the employer reasonably believed in good faith that the employee had engaged in misconduct, not whether the employee actually did so." Leach v. State Farm Mut. Auto. Ins. Co., 431 F. App'x 771, 777 (11th Cir. 2011). Herman has failed to present any evidence that AAR's decision makers did not honestly believe that Herman violated its Code of Conduct and Anti-Harassment Policy. Herman may disagree with AAR's findings, but he provides no basis for a jury to conclude that AAR's proffered reason for terminating him was not its true reason. Notably, an "employer may [terminate] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Walton v. Cives Corp., 491 F. App'x 29, 32 (11th Cir. 2012) (quoting Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)). Indeed, the Eleventh Circuit has unequivocally stated,

> federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.

Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (citations and quotations omitted).  Here, Herman has failed to face AAR's legitimate business reason head on and rebut it.

Herman's evidence regarding other older employees who were terminated is similarly unavailing.  In his declaration, Herman identifies several AAR employees and asserts that he has "no knowledge regarding the circumstances surrounding [their] termination other than it was because of [their] age." See Herman Decl. at 12-13.  But Herman makes no attempt to identify any specific facts or evidence that support this assertion.  In response, AAR provides evidence regarding the circumstances surrounding each of these employees' departures from AAR that have nothing to do with their age.  See Garcia Decl. at 4-5.  Herman points to no contrary evidence and his unfounded assumptions are insufficient at this stage to meet his burden of creating a reasonable inference that AAR's true reason for terminating his employment was age discrimination.  Burdine, 450 U.S. at 256 ("The plaintiff retains the burden of persuasion . . . the ultimate burden of persuading the court that []he has been the victim of intentional discrimination.").  In light of the foregoing, no genuine

issue of fact is present and summary judgment is due to be granted in favor of AAR as to Herman's claims of age discrimination under the ADEA and the FCRA.

### b. Retaliation

To make a prima facie showing of retaliation under the ADEA and FCRA, "a plaintiff must show that (1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." <u>Weeks v. Harden Mfg. Corp.</u>, 291 F.3d 1307, 1311 (11th Cir. 2002) (citations omitted); <u>Carter v. Health Mgmt. Assocs.</u>, 989 So. 2d 1258, 1263 (Fla. 2d DCA 2008).  With respect to the first element of his prima facie case, Herman must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." <u>Id.</u> (quoting <u>Little v. United Tech., Carrier Transicold Div.</u>, 103 F.3d 956, 960 (11th Cir. 1997)).  The Eleventh Circuit has instructed:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

Id. (quoting Little, 103 F.3d at 960).  As to the third element – whether there is a causal connection between the adverse action and the protected activity – the Eleventh Circuit has stated,

> [t]he causal link in the retaliatory discharge formula is not the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action. Such a connection would rise to the level of direct evidence of discrimination, shifting the burden of persuasion to the defendant. Rather, we construe the 'causal link' element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated.

Hairston, 9 F.3d at 920 (quoting Simmons v. Camden County Board of Ed., 757 F.2d 1187, 1189 (11th Cir. 1985), cert. denied, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985)).  Of course, "[a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action."  Hairston, 9 F.3d at 920 (quoting Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). Having established such knowledge a plaintiff can rely on a close temporal proximity between the protected expression and adverse employment action to demonstrate causation.  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).  However,

> [t] he Supreme Court has stated that "mere temporal proximity between ... knowledge of protected activity and an adverse ... action ... must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (citations omitted). The Court cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal

connection. See id. (citing Richmond v. ONEOK, 120 F.3d 205, 209 (10th Cir. 1997) (3–month period insufficient) and Hughes v. Derwinski, 967 F.2d 1168, 1174–75 (7th Cir.1992) (4–month period insufficient)). If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law.

Id. Finally, as with a substantive age discrimination claim, if the employer articulates legitimate reasons for its actions, the presumption created by the prima facie case is rebutted and the plaintiff must show the employer's proffered reason was not the actual reason for the adverse employment action. See Hairston, 9 F.3d at 919; see also Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006).

AAR seeks summary judgment as to Herman's claims of retaliation under both the ADEA and FCRA. See generally Motion. AAR argues that Herman failed to make a prima facie showing of retaliation because he relies on comments made by his non-decisionmaking coworkers, he did not complain about the comments to human resources, and the individuals who decided to fire him had no knowledge of his purported protected activity. Id. at 21. Accordingly, AAR maintains that Herman cannot establish a causal connection between his termination and his complaints of age discrimination. Id. Even if Herman had made a prima facie showing of retaliation, AAR contends that it has presented a legitimate, non-discriminatory reason for his firing. Id. at 22. Finally, AAR argues that Herman presented no evidence that his termination

was actually a result of any complaints about "age discrimination in the workplace" or that AAR treated Herman differently than any similarly situated employee. Id. at 23. In his Response, Herman contends that he has proved causation through a "cat's paw" theory of retaliation because Garcia followed Lile's discriminatory recommendation without conducting an independent investigation. Response at 19. He further repeats his contention that it is illogical to believe that Garcia did not know his age, or at a minimum that he was over forty years old, when she made her "retaliatory recommendation" to management to terminate him. Id. at 19-20.

As an initial matter, the Court notes that Herman does not specifically identify how or when he "opposed any practice made unlawful" under the ADEA or the FCRA. The record shows that Herman made a comment to human resources in connection with the George Mayo investigation four or five years prior to his termination. See Herman Depo at 66-67. Other than complaining that Reynolds' comment in response to this incident was unprofessional, Herman testified that he did not complain about any age-related comments or conduct by Reynolds to human resources or anyone else at AAR. Id. at 68. Nothing in the record suggests that in mentioning Reynolds' comment four years prior to his termination, Herman objectively or subjectively believed that AAR was engaged in practices that violated the ADEA or the FCRA. Additionally, the several years between the Mayo investigation and Herman's termination is

certainly too large of a gap to demonstrate causation through temporal proximity.

When asked if he ever complained of age discrimination to Lile, Herman responded, "I told him what was said, yes" in reference to Burrus and Pate's name-calling. Id. at 69. However, Herman complained to Lile only one or two times over the course of his six-year tenure at AAR, id., and Herman concedes that once he went to Raytheon in July of 2018, he never made any further complaints. Id. at 88. The record is completely devoid of any evidence to suggest that in reporting these comments to Lile, Herman subjectively and objectively believed that he was complaining about an unlawful employment practice. And there is nothing in the record that suggests Herman's termination was at all related to his conversations with Lile six months earlier. Moreover, the undisputed record shows that AAR's Human Resources team made the decision to fire Herman and they had no knowledge of any complaints of age discrimination by Herman. See Garcia Decl. at 1; see also Gross Decl. at 2.

Regardless, even if Herman has established a prima facie case of retaliation, as discussed above, AAR has satisfied its burden of producing a legitimate non-discriminatory reason for Herman's termination, and Herman has failed to demonstrate that this reason is a pretext for prohibited retaliatory conduct. See King v. Adtran, Inc., 626 F. App'x 789, 792 (11th Cir. 2015). The undisputed record evidence establishes that AAR terminated Herman's

31

employment because an internal investigation revealed that Herman had violated company policy.  Because no genuine issue of fact remains for trial, summary judgment is also due to be granted in favor of AAR as to Herman's retaliation claims under the ADEA and the FCRA.

## IV.    Conclusion

In conclusion, viewing the record in the light most favorable to Herman, Herman has failed to point to evidence that would permit a reasonable jury to find that AAR's stated reason for terminating his employment was merely pretext for unlawful discrimination or retaliation.  As such, summary judgment is proper as to the entirety of Herman's claims.

Accordingly, it is

**ORDERED**:

1. Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 44) is **GRANTED**.

2. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant AAR Government Services, Inc.

3. The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of March, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc28
Copies to:

Counsel of Record